**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CURTIS JOHNSON,**
    Petitioner,

v.                                   Case No. 4:05cv484/MP/MD

**JAMES R. MCDONOUGH,**
    Respondent.

_____

**REPORT AND RECOMMENDATION**

    Before the court is an amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 7). Respondent has filed a response (docs. 13, 14) to which petitioner has replied (doc. 15). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY[1]

On January 5, 1999, petitioner appeared at Willie Troupe's home asking for Troupe's sister. (Doc. 14, ex. B, Trial Transcript, p. 15). Mr. Troupe told petitioner he didn't know where she was, and petitioner left. A short time later, petitioner returned with Daewoo Shannon and knocked on Mr. Troupe's door. Mr. Troupe asked who it was, and petitioner replied that it was Curtis Johnson (petitioner). Upon opening the door, Shannon pointed a gun at Mr. Troupe, pushed petitioner into Mr. Troupe, and demanded that Troupe "give it up." (*Id.*, pp. 15, 21). Petitioner and Shannon then pushed Mr. Troupe back into his bedroom and onto his bed. (*Id.*, p. 15). Petitioner told Shannon that Mr. Troupe's money was on the dresser. Shannon grabbed the money and put it in his pocket. Mr. Troupe started to rise from the bed, but petitioner warned him, "You better lay down. I don't want to see nothing bad happen to you." (*Id.*, p. 15). Petitioner and Shannon left. (*Id.*). Mr. Troupe notified the authorities, told them who had robbed him, and petitioner and Shannon were arrested. (*Id.*, pp. 15-18).

Petitioner was charged by information in the Circuit Court of Gadsden County, Florida, with one count of armed robbery. A jury found him guilty of the lesser included offense of robbery, and he was sentenced to fifteen years imprisonment as a Prison Releasee Reoffender. His conviction and sentence were affirmed on appeal, and he filed two motions for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, both of which were denied and affirmed on appeal. He now brings this federal habeas corpus petition. The respondent concedes that the petition is timely (doc. 13, p. 4), and that the three grounds raised herein were properly exhausted by being presented to the state courts (doc. 13, pp. 5, 9, 10).

---

[1] The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution. Due process requires a state to prove each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984). Although this court is not called upon to address directly the sufficiency of the evidence, the evidence presented to the jury plays a part in the court's analysis.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> **(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–**
>> **(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or**
>> **(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.**

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:

> **In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas**

> court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring). Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable. More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172. The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine

whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

      Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra,* 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra,*

529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

## PETITIONER'S GROUNDS FOR RELIEF
1. <u>Due Process Violation - Jury Verdict Form Directed Finding of Guilt.</u>

For his first ground for relief petitioner says that the jury verdict form offered the jury the choice of finding him guilty of the charged crime and of three lesser

included offenses, but did not offer the jury the choice of finding him not guilty, which, he contends, effectively directed a verdict of guilt.

### A.  Clearly Established Federal Law

It scarcely needs stating that the presumption of innocence is a "jurisprudential bedrock."  *United States v. Veltmann*, 6 F.3d 1483, 1493 (11th Cir. 1993).  *See Kentucky v. Whorton*, 411 U.S. 786, 99 S.Ct. 1930, 60 L.Ed.2d 640 (1979); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  A defendant is innocent until proven guilty, and a court cannot direct a jury to find a defendant guilty.

### B.  Federal Review of State Court Decision

In support of his claim, petitioner alleges that the verdict form presented to the jury consisted of one page and offered the jury the choice of four possible guilty verdicts, but did not offer the choice of a not guilty verdict.  He presented this claim in his second motion for post-conviction relief as fundamental error.  The Rule 3.850 court denied the claim as factually incorrect.  The trial court pointed out that the trial transcript showed that the court read the entire verdict form to the jury, and told them that the not guilty section was on page two of the form.  The court also found that the verdict form had two pages and that the not guilty section was on the second page.  The trial court attached the verdict form and part of the transcript to its order (doc. 14, ex. O).  The copy of the Rule 3.850 court's order made a part of this court's record did not include the attachments.

When petitioner filed his reply in this proceeding he presented what purported to be a true copy of the verdict form, and it had only one page, with four guilty verdicts offered, but no place for the jury to find him not guilty.  The undersigned reviewed the trial transcript, and determined that the court had indeed read the verdict form to the jury and had indeed told the jurors that the not guilty section was on the second page (doc. 14, ex. B, p. 113).  However, there was no copy of the second page in this court's record, so out of an abundance of caution the undersigned ordered the respondent to produce certified copies of (1) the complete verdict form, (2) the complete order denying the second motion for post-conviction

relief, with attachments, and (3) a complete copy of the trial court's order as it appeared in the appellate court's records. Respondent has now complied on the first two requirements. As to the third requirement, respondent has shown that the appellate court does not keep a copy of the trial court's file, but returns it when the mandate issues, so that requirement could not be met (doc. 21, exhibits A, B, C).

Exhibit A to doc. 21 is a copy of the verdict form, certified by the Clerk of Court of Gadsden County. The verdict form consists of two pages, and the not guilty section is on the second page. Exhibit B to doc. 21 is a copy of the trial court's order denying petitioner's second motion for motion for post-conviction relief, certified by the same clerk. Attached to the order is a copy of the same two page verdict form, as well as portions of the transcript of the trial in which the court read the verdict form to the jury. Specifically, after explaining the four choices on the first page, the court said to the jury" "Page two: We, the jury, find the defendant Curtis Johnson not guilty. So say we all, this blank day of June, 1999. Once again, a line for the foreperson's signature." (Doc. 21, ex. B, p. 2). As noted earlier, the same language appears in the original transcript filed with this court (doc. 14, ex. B, p. 113).

Petitioner has filed a supplemental reply, in which he again asserts that the copy of the verdict form he received from the clerk had only one page (doc. 23). He has attached a copy of that page, along with the request form he submitted to the clerk (doc. 23, ex. A, pp. 1-2). Notably, the request form indicates that petitioner requested a copy of "Jury Verdicts." (doc. 23, ex. A, p. 1). Since the first page of the verdict form contained the final verdict, it makes sense that the clerk sent petitioner only the first page (doc. 23, ex. A, p. 1). This does not suggest that a second page does not exist.

Petitioner's claim boils down to a factual issue - whether the verdict form contained a second page which offered the jury a verdict of not guilty. The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §

2254(e)(1). Here, the state court found, and the record demonstrates, that the verdict form consisted of two pages and offered the jury the choice of finding petitioner not guilty. Petitioner has not presented clear and convincing evidence to the contrary. Since this is the linchpin of petitioner's claim, his claim must fail.

The state court's adjudication of this claim did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*. Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence before it. 28 U.S.C. § 2254(e)(1). Petitioner is not entitled to federal habeas relief on this issue.

**2. <u>Ineffective Assistance of Counsel.</u>**

In his second and third claims petitioner asserts that he was denied his constitutional right to the effective assistance of counsel.

    **A. Clearly Established Federal Law**

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's

performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance." *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc). Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted). Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

    B. Federal Review of State Court Decision

        i.    <u>Failure to call witnesses.</u>

For his first ineffective assistance of counsel claim petitioner contends that

his attorney's performance was deficient when he failed to call exculpatory witnesses.

In his first motion for post-conviction relief petitioner made the following factual allegation:

> Sister of the victim, who was available for testimony on the day of trial, was prepared to testify that the defendant did not rob the victim, indeed that his co-defendant, Daewoo Shannon committed the robbery. In addition, Teddy Parks, an eye witness, would have testified to the same facts. Counsel was ineffective for failing to call these witnesses, who would have shown that Mr. Johnson was not guilty, that Daewoo Shannon committed the robbery. Bernard Safford was with the defendant on the first visit to the home.

(Doc. 14, ex. H, p. 9).[2]  The Rule 3.850 court denied relief on this ground, stating:

> These allegations are insufficient because such a statement is a conclusion by the witness, not testimony or facts. The Defendant does not state what these witnesses heard or saw and how those facts would have led a jury to conclude that the Defendant was not guilty. This is especially so where the theory of guilt was based upon principal or aiding and abetting theory.

(Ex. I, p. 2).  Petitioner then filed a "successive" motion for post-conviction relief raising the same claim, this time adding the following facts:

> Alice Troupe, the victim's sister, would have testified that the victim, Willie Troupe, knew that the defendant did not rob him, as Alice Troupe knew this information as well. Ms. Troupe would have testified that Willie Troupe was a known drug dealer, and not to provoke an investigation of the actual facts of the robbery and contents of drug involvement Willie Troupe just went along with the State's accusation of the defendant.
>
> * * *
>
> Likewise, Teddy Parks was an eyewitness to the offense. Teddy Parks would have testified at trial that he saw the perpetrators of the robbery and that the defendant was not involved in the robbery of Willie Troupe.

(Ex. N, "Successive Motion" p. 12).  The trial court denied relief, stating that this

---

[2] Hereafter, all references to exhibits will be to those attached to doc. 14, unless otherwise noted.

*Case No: 4:05cv484/MP/MD*

proposed testimony would have conflicted with petitioner's testimony at trial because: (1) petitioner's trial testimony did not mention Teddy Parks as being present, and (2) petitioner testified that he was with Daewoo Shannon at Troupe's house, that neither of them robbed Mr. Troupe or took anything, and that neither of them had a gun. (Ex. O). The court further noted that the record was clear that Alice Troupe was not present at the house, and her proffered testimony would be inadmissible hearsay. Finally, the court held that petitioner was ignoring the applicability of the principal theory, on which the jury was instructed. Based on these findings, the court held that counsel's decision was a "wise and strategic choice."

At trial, petitioner testified to the following relevant facts: (1) "Bernard" and Joseph Brooks went to Mr. Troupe's house and got some dope (2) Bernard, Joseph Brooks and petitioner attempted to smoke the dope but it was no good, (3) the three of them went to Mr. Troupe's house and complained, (4) Mr. Troupe gave them more drugs, which also turned out to be no good, (5) petitioner asked Daewoo Shannon to accompany him to Mr. Troupe's house and pretend he was there to buy drugs; (6) once the two arrived, petitioner asked Mr. Troupe to give him his money back or more dope, but Mr. Troupe refused, (7) petitioner told Mr. Troupe that Shannon wanted to "buy a 20," and asked Mr. Troupe if he had one, (8) Mr. Troupe put the dope in petitioner's hand, and Shannon and petitioner left, (9) neither petitioner nor Shannon had a gun, (11) neither of them robbed Mr. Troupe, (12) petitioner lied to the police about whether he had been to Mr. Troupe's house. Mr. Troupe testified consistent with the background facts in the first section of this report and recommendation -- that he was robbed at gunpoint by petitioner and Shannon.

The state court ultimately denied relief on the merits of this claim in petitioner's second Rule 3.850 proceeding, determining that the decision not to call the witnesses was a strategic one, and that it was reasonable because the proffered testimony would have been inadmissible and inconsistent with petitioner's own trial testimony. (Ex. O). This decision was not an unreasonable application of *Strickland*.

The state court's factual finding that the record conclusively rebutted petitioner's allegation that Alice Troupe was an eyewitness to the robbery, is amply supported by the trial transcript (Mr. Troupe's testimony that she wasn't in the house). No evidence at trial, including petitioner's testimony, suggested otherwise. Based on this finding, the state court concluded that Alice Troupe's testimony would have been inadmissible hearsay.

Petitioner's argument that the state court unreasonably applied *Strickland* obviously depends upon this court determining counsel's performance was deficient, but first this court would have to conclude that the state court misinterpreted state law concerning the admissibility of Ms. Troupe's testimony. In *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338 (11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), the Eleventh Circuit addressed similar issues. In *Herring,* the petitioner argued that his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial. *Id.* at 1354-55. The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient. *Id.* The Eleventh Circuit held: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id.* (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Similarly, in *Callahan*, the petitioner contended his counsel was ineffective for failing to argue that, based on the Alabama state courts' interpretation of the Double Jeopardy Clause in three state court cases (*Hull v. State*, 607 So.2d 369 (Ala. Crim. App. 1992), *Ex parte Hergott*, 588 So.2d 911 (Ala. 1991), and *Ex parte Callahan*, 471 So.2d 463 (Ala. 1985) (*Callahan I*)), the introduction of petitioner's statements at his second trial was precluded. The Alabama Court of Criminal Appeals concluded that the petitioner's claim relied on an erroneous interpretation of state law and rejected it. The Eleventh Circuit held:

> **[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on *Callahan I*, *Hull*, and *Hergott* – the objection would have been overruled. *Callahan* [*v. State*], 767 So.2d [380,] 386-87 [(Ala. Crim. App. 1999)] (*Callahan III*).  Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.**
>
> **Moreover, we are convinced [petitioner] could not satisfy the prejudice prong of *Strickland*.  [Petitioner's] ability to demonstrate prejudice is again foreclosed by the state court's decision in *Callahan III*.  Even if [petitioner's counsel] was ineffective for failing to make the objection, the state court has told us that if he did make the objection it would not have been successful.  [Petitioner] cannot be prejudiced by his counsel's failure to make a losing objection.**

**427 F.3d at 932.**

**Here, as in *Herring* and *Callahan*, the Florida courts have answered the question of what would have happened had petitioner's counsel offered Alice Troupe's testimony - it would not have been admitted as evidence.  Therefore, counsel cannot be faulted for having failed to offer the testimony.  Moreover, petitioner cannot be prejudiced by his counsel's failure to offer inadmissible testimony.**

**Even assuming *arguendo* that Alice Troupe and Teddy Parks were eyewitnesses, the state court correctly found that their proposed testimony -- that they witnessed the incident and saw Shannon commit the robbery -- was inconsistent with petitioner's trial testimony that neither he nor Shannon had a gun, committed a robbery, or took anything.  It was not an objectively unreasonable strategic decision for counsel to decline to call witnesses whose testimony would have conflicted with his client's version of events.**

**Further, in light of the applicability of the law of principal, petitioner has not established a reasonable probability that the proposed testimony would have changed the result of the trial.  The law of principal provides that regardless of the fact that it was not petitioner who actually held the gun and grabbed the money off the dresser, petitioner was punishable for the robbery as a principal if he had a conscious intent that the robbery be committed, and if he did some act or said some**

word which encouraged or caused or assisted Shannon in committing the robbery (doc. 14, ex. B, Trial Transcript p. 108). Ms. Troupe's and Mr. Parks' proposed testimony did not exculpate petitioner in this regard. Based on the foregoing, this court cannot say that the state court's denial of relief on this claim was contrary to, or involved an unreasonable application of, the *Strickland* standard.

### ii. Failure to Argue Reasonable Hypothesis of Innocence.

Finally, petitioner faults counsel for failing to argue to the jury that the State failed to disprove every reasonable hypothesis of innocence, and for further failing to urge the jury to interpret Mr. Troupe's testimony as indicating that petitioner was in Mr. Troupe's home only because Shannon forced him into the house at gunpoint, making petitioner a victim as well.

The Rule 3.850 court rejected this claim, holding that the reasonable hypothesis of innocence theory is relevant in cases of circumstantial evidence, but did not apply in this case where there was direct testimony by Mr. Troupe that petitioner participated in the robbery. In order for this court to conclude that the state court unreasonably applied *Strickland*, it would first have to conclude that the state court misinterpreted state law. As just discussed, this court will not second guess Florida courts on questions of state law. *See Herring, supra*; *Callahan, supra*. Here, as in *Herring* and *Callahan*, the state courts have answered the question of what would have happened had petitioner's counsel attempted to argue that the State was obligated to disprove every reasonable hypothesis of innocence -- such argument would have been disallowed. Therefore, counsel cannot be faulted for failing to attempt it. And since counsel would have failed had he acted as petitioner demands, petitioner cannot show prejudice.

Furthermore, to the extent petitioner contends counsel should have argued that petitioner was a "secondary victim" as opposed to a co-perpetrator of Shannon's robbery, petitioner cannot establish deficient performance or prejudice because such argument would have been inconsistent with petitioner's trial testimony that neither he nor Shannon had a gun, committed a robbery, or took anything.

**For all the foregoing reasons, the state court's denial of relief on this claim was neither contrary to, nor involved an unreasonable application of, the *Strickland* standard.  Therefore, petitioner is not entitled to federal habeas relief.**

**Accordingly, it is respectfully RECOMMENDED:**

**That the 28 U.S.C. § 2254 amended petition for writ of habeas corpus (doc. 7), challenging the conviction and sentence in *State of Florida v. Curtis Johnson* in the Circuit Court of Gadsden County, Florida, case no. 99-87 CFA, be DENIED, and that the clerk be directed to close the file.**

**At Pensacola, Florida, this 24th day of August, 2007.**

/s/ *Miles Davis*
         **MILES DAVIS
         UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**